## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA - NEWNAN DIVISION

|  |  |
|---|---|
| **SANDRA THURLOW GOODMAN, individually as parent of Aaron Michael Martinette, deceased, and as Administrator of the Estate of Aaron Michael Martinette, deceased,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**WeCare TLC, LLC, Beverly Burford, RN, Cindy Morris, LPN, Brandy Willoughby, LPN, Troup County Sheriff's Office, Troup County Jail, Troup County, Georgia, Sheriff James Woodruff, individually and in his official capacity, Captain Marty Reeves, individually and in his official capacity, Deputy Andrew Braman, individually and in his official capacity, Jail Officer Robin Stocking, individually and in his official capacity, Jail Officer Justin Hendrix, individually and in his official capacity, Investigator Keith Godfrey, individually and in his official capacity, Jail Officer Christian Jose Figueroa-Laboy, individually and in his official capacity, Corporal Reece Lemons, individually and in his official capacity, Deputy John Does 1-4, Jail Officer John Does 1-4, Physician John Doe, Nurse Practitioner John Doe,**<br><br>    **Defendants.** | **Civil Action No.** |

## COMPLAINT

COMES NOW, Plaintiff Sandra Thurlow Goodman, individually as parent of Aaron Michael Martinette, deceased, and as Administrator of the Estate of Aaron Michael Martinette, deceased (hereinafter "Plaintiff"), and files this her Complaint against Defendants WeCare TLC, LLC, Beverly Burford, RN, Cindy Morris, LPN, Brandy Willoughby, LPN, Troup County Sheriff's Office, Troup County Jail, Troup County, Georgia, Sheriff James Woodruff, individually and in his official capacity, Captain Marty Reeves, individually and in his official capacity, Deputy Andrew Braman, individually and in his official capacity, Jail Officer Robin Stocking, individually and in his official capacity, Jail Officer Justin Hendrix, individually and in his official capacity, Investigator Keith Godfrey, individually and in his official capacity, Jail Officer Christian Jose Figueroa-Laboy, individually and in his official capacity, Corporal Reece Lemons, individually and in his official capacity, Deputy John Does 1-4, Jail Officer John Does 1-4, Physician John Doe and Nurse Practitioner John Doe (collectively "Defendants"), to recover damages for professional negligence and the violation of Aaron Michael's Constitutional and state rights, showing the Court as follows:

## NATURE OF THE CASE

This is a 42 U.S.C.§ 1983 Federal Civil Rights action, an action under Title II of the Americans With Disabilities Act (ADA) and § 504 of The Rehabilitation Act of 1973, and state law medical malpractice action arising from the wrongful death of Aaron Michael Martinette caused by the unreasonable acts, omissions, inadequate care, and deliberate indifference of Defendants during Aaron's incarceration at the Troup County Jail ("Jail"). Plaintiff alleges that the named individual Defendants employed by the Troup County

2

Jail's  contract medical provider, Defendant WeCare TLC, LLC ("WeCare"), were deliberately indifferent to Mr. Martinette's serious mental and physical health needs in violation of the Eighth and/or Fourteenth Amendments, and because said Defendants were private contractors rather than public officials, they are not entitled to assert the defense of qualified immunity.  Plaintiff also alleges a pendent state law claim for medical negligence against Defendant WeCare for its failure directly and vicariously through its agents and/or employees, to comply with the standard of care applicable to the medical and nursing professions generally under like and similar conditions.

Plaintiff further alleges that the named individual Defendants employed by the Troup County Sheriff's Office and/or Troup County, Georgia, were deliberately indifferent to Aaron Martinette's serious mental and physical medical needs in violation of the Eighth and/or Fourteenth Amendments. In addition, Plaintiff alleges that Defendants Deputy Andrew Braman, Jail Officer Robin Stocking, Jail Officer Justin Hendrix, Investigator Keith Godfrey, Jail Officer Christian Jose Figueroa-Laboy, Corporal Reece Lemons, Deputy John Does 1-4, and Jail Officer John Does 1-4, engaged in unnecessary, disproportionate, and objectively unreasonable force, acts, and omissions against the person of Aaron Martinette during his incarceration at the Jail, causing him serious bodily harm and ultimately his death on September 8, 2023.

Plaintiff alleges that Troup County Sheriff James Woodruff, Troup County Sheriff's Office, Troup County Jail, Troup County, Georgia and the named Troup County Deputies and Jail Officers, violated the American With Disabilities Act and the Rehabilitation Act of 1973 by failing to provide reasonable accommodations for Aaron Martinette for his mental health condition and disability, by failing to provide needed and necessary health

3

treatment and services thereby discriminating against Aaron Martinette on the basis of his disability.

Aaron Michael Martinette was a 33-year-old male suffering from mental illness, which included a diagnosis of bipolar disorder and seizure disorder. Aaron had suicidal ideations and manic-depressive episodic events where he would get loud, vocal and aggressive.  On or about September 5, 2023, and for several days prior, Aaron was not sleeping, and he became increasingly agitated, aggressive, and vocally loud. It became clear to the Plaintiff that Aaron was no longer taking his medications.  Aaron and the Plaintiff agreed that Aaron needed to go to the hospital. Plaintiff called 911 explaining her son's condition and requested an ambulance to take Aaron to the hospital.

Aaron was transported via ambulance to Wellstar West Georgia Medical Center and placed in Exam Room 14. While Aaron waited to be seen by a doctor, he started smoking a cigarette.  A hospital security guard who was alerted that Aaron was smoking, entered the Exam Room and told Aaron to put down the cigarette.  In response, Aaron flicked the cigarette towards the security guard hitting him on his shirt.  The hospital security guard called the City of LaGrange Police who upon arriving at the hospital arrested Mr. Martinette and transported him to the Troup County Jail.

On September 6, 2023, at approximately 3:00 a.m., upon arrival at the Troup County Jail, Aaron Martinette still exhibited extreme behavior indicating a mental disorder, including suffering manic-depressive episodic events where he would get loud, vocal, and aggressive; however, he was not provided with any medical or mental health treatment. In violation of Troup County Sheriff's Office's and Troup County Jail's policies and procedures as well as the duties and responsibilities of Defendant WeCare, its RN and

4

LPNs, Aaron did not receive a medical assessment upon being booked or any physical or mental health evaluation whatsoever despite Defendants' knowledge that he suffered from a severe mental disorder and was exhibiting extremely abnormal behavior.  Instead, Defendant LPN Morris was requested to come to booking to "set eyes" on Aaron Martinette, after being told he was "kicking and banging" on the cell door. Defendant LPN Morris did not attempt to examine or evaluate Aaron; she simply talked to him through the cell door.

From the time he was booked into Troup County Jail on the morning of September 6, 2023 until he was transported by EMS to West Georgia Medical Center at 9:45 p.m. on September 7, 2023, having gone from rapid breathing to not breathing at all. Aaron died at the West Georgia Medical Center in the early morning on September 8, 2023. At no time during his incarceration did Defendants provide any emergency mental health services or have a physician or nurse practitioner examine Aaron or consult with a physician or other medical or mental health professional for assistance in securing mental health and medical services for Aaron.

During the time he was incarcerated at the Troup County Jail, Aaron Martinette was tazed by the Defendant deputies and jailers, no less than 6 times, with the full knowledge that Aaron was in a mental health crisis, needing immediate mental health care, though none was ever forthcoming. The autopsy performed on Aaron Martinette's body by the GBI crime lab, revealed evidence of multiple acute injuries, including but not limited to, severe bruising and contusions over most of the body, multiple rib fractures, subdural cerebral hemorrhage, purple contusion of the ascending colon, and evidence of multiple hemorrhages.

5

## A. <u>JURISDICTION & VENUE</u>

### 1.

This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 because this action arises under 42 U.S.C. § 1983 and alleges violations of rights guaranteed to Aaron Martinette by virtue of the Eighth and Fourteenth Amendments of the United States Constitution and this Court has jurisdiction of this action pursuant to 42 U.S.C. § 12101, and 29 U.S.C.A. § 794. This Court has supplemental jurisdiction of Plaintiff's related state law claims, including but not limited to violations of rights guaranteed by the Constitution of the State of Georgia, by virtue of 28 U.S.C. § 1367.

### 2.

Venue is proper in the Northern District of Georgia, Newnan Division, as all acts and omissions complained of occurred in Troup County, Georgia, and one or more Defendants reside in this District.

### 3.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

## B. <u>PARTIES</u>

### 4.

Plaintiff Sandra Thurlow Goodman is the parent of Aaron Michael Martinette, deceased, and the Administrator of the Estate of Aaron Michael Martinette, deceased, who suffered and ultimately died because of unreasonable acts, omissions, excessive force, and deliberate indifference of the named Defendants while an inmate at the Troup County Jail.

6

5.

Defendant WeCare TLC, LLC ("Defendant WeCare") is a Florida for-profit limited liability corporation, which does and at all times relevant hereto did business in the State of Georgia with its principal address at 999 Douglas Avenue, Suite 1119, Altamonte Springs, Florida 32714. Defendant WeCare may be served with process by serving its registered agent, CT Corporation System, 289 S. Culver Street, Lawrenceville, Georgia 30046 or by request for waiver of service via First Class Mail sent to said address.

6.

Defendant Beverly Burford, RN ("Defendant Burford") is a nurse licensed to practice nursing in the State of Georgia and at all times relevant hereto, was an employee and/or agent of Defendant WeCare who provided medical care to inmates at the Troup County Jail during the time Aaron Martinette was an inmate there.  Upon information and belief, Defendant Burford currently resides and may be served with process at 121 Jandale Drive, Lagrange, Georgia 30241 or by request for waiver of service via First Class Mail sent to said address.

7.

Defendant LPN Cindy Morris ("Defendant Morris") is a LPN licensed to practice nursing in the State of Georgia and at all times relevant hereto, was an employee and/or agent of Defendant WeCare who provided medical care to inmates at the Troup County Jail during the time Aaron Martinette was an inmate there.  Upon information and belief, Defendant Morris currently resides and may be served with process at 3959 Greenville Road, Lagrange, Georgia 30241 or by request for waiver of service via First Class Mail sent to said address.

7

8.

Defendant LPN Brandy Willoughby ("Defendant Willoughby") is a LPN licensed to practice nursing in the State of Georgia and at all times relevant hereto, was an employee and/or agent of Defendant WeCare who provided medical care to inmates at the Troup County Jail during the time Aaron Martinette was an inmate there.  Upon information and belief, Defendant Morris currently resides and may be served with process at 213 N. Lee Street, Lagrange, Georgia 30241 or by request for waiver of service via First Class Mail sent to said address.

9.

Defendant Troup County Sheriff's Office is the Law Enforcement Agency for Troup County and is operated, managed, and supervised by the duly elected Sheriff of Troup County. Troup County Sheriff's Office has the capacity to sue and be sued and may be served with process by serving Sheriff James Woodruff at his office located at 130 Sam Walker Drive, Lagrange, Georgia 30241 or by request for waiver of service via First Class Mail sent to said address.

10.

Defendant Troup County Jail is a department, instrumentality and arm of the Troup County Sheriff's Office under the control of the duly elected Sheriff of Troup County and supervised and managed by administrators appointed by the Sheriff. Defendant TCJ has the capacity to sue and be sued and may be served with process by serving Sheriff James Woodruff at his office located at 130 Sam Walker Drive, Lagrange, Georgia 30241 or by request for waiver of service via First Class Mail sent to said address.

8

11.

Defendant Troup County, Georgia ("Defendant Troup County") is a duly created political subdivision of the State of Georgia and is charged with the financial responsibility of operating the Troup County Jail. Defendant Troup County has the capacity to sue and be sued and may be served with process by serving the Chairman of the Troup County Board of Commissioners, Patrick Crews, as the Chief Executive Officer at his office located at 100 Ridley Avenue, Lagrange, Georgia 30241.

12.

Defendant Sheriff James Woodruff is the duly elected Sheriff of Troup County, Georgia having served as Sheriff at all relevant times through the present date. Sheriff Woodruff was and is responsible for and is the final policymaker for the supervision, administration, policies, practices, customs, and operations of the Troup County Sheriff's Office. Sheriff Woodruff is sued in his individual capacity and his official capacity.  Sheriff Woodruff may be served with process at the Troup County Sheriff's Office located at 130 Sam Walker Drive, Lagrange, Georgia 30241 or by request for waiver of service sent to him via First Class Mail at said office.

13.

Defendant Captain Marty Reeves ("Defendant Reeves") was at all times relevant hereto a deputy sheriff, employee, and/or agent of Defendant Troup County and/or Defendant Troup County Sheriff's Office. Upon information and belief, Defendant Reeves is a resident of Troup County, Georgia and is sued in his individual capacity and in his official capacity as the Jail Administrator-Troup County Jail.  Defendant Reeves may be served with process at the Troup County Sheriff's Office located at 130 Sam Walker Drive,

Lagrange, Georgia 30241 or by request for waiver of service sent to him via First Class Mail at said office.

14.

Defendant Deputy Andrew Braman ("Defendant Ross") was at all times relevant hereto a deputy sheriff, employee, and/or agent of Defendant Troup County and/or Defendant Troup County Sheriff's Office. Upon information and belief, Defendant Braman is a resident of Valencia County, New Mexico and is sued in his individual capacity and official capacity. Defendant Braman may be served with process at 388 La Entrada Road, Los Lunas, New Mexico 87031 or by request for waiver of service sent to him via First Class Mail at said office.

15.

Defendant Jail Officer Robin Stocking ("Defendant Stocking") was at all times relevant hereto a jail officer, employee, and/or agent of Defendant Troup County and/or Defendant Troup County Sheriff's Office. Upon information and belief, Defendant Stocking is a resident of Troup County, Georgia and is sued in his individual capacity and official capacity. Defendant Stocking may be served with process at 1123 Alverson Road, Lagrange, Georgia 30241 or by request for waiver of service via First Class Mail sent to said address.

16.

Defendant Jail Officer Justin Hendrix ("Defendant Hendrix") was at all times relevant hereto a jail officer, employee, and/or agent of Defendant Troup County and/or Defendant Troup County Sheriff's Office. Upon information and belief, Defendant Hendrix is a resident of Troup County, Georgia and is sued in his individual capacity and official

10

capacity. Defendant Hendrix may be served with process at 108 Waterwood Bend, Hogansville, Georgia 30230 or by request for waiver of service via First Class Mail sent to said address.

17.

Defendant Investigator Keith Godfrey ("Defendant Godfrey") was at all times relevant hereto an investigator, employee, and/or agent of Defendant Troup County and/or Defendant Troup County Sheriff's Office. Upon information and belief, Defendant Godfrey is a resident of Troup County, Georgia and is sued in his individual capacity and official capacity. Defendant Godfrey currently resides and may be served with process at 3978 Bartley Road, West Point, Georgia 31833 or by request for waiver of service via First Class Mail sent to said address.

18.

Defendant Jail Officer Christian Jose Figueroa-Laboy ("Defendant Figueroa-Laboy") was at all times relevant hereto a jail officer, employee, and/or agent of Defendant Troup County and/or Defendant Troup County Sheriff's Office. Upon information and belief, Defendant Figueroa-Laboy is a resident of Muscogee County and is sued in his individual capacity and his official capacity. Defendant Figueroa-Laboy may be served with process at 3900 Meritas Drive, Columbus, Georgia 31904 or by request for waiver of service sent to him via First Class Mail at said office.

19.

Defendant Corporal Reece Lemons ("Defendant Lemons") was at all times relevant hereto a jail officer, employee, and/or agent of Defendant Troup County and/or Defendant Troup County Sheriff's Office. Upon information and belief, Defendant Lemons

11

is a resident of Troup County, Georgia and is sued in his individual capacity and official capacity. Defendant Lemons currently resides and may be served with process at 39 Barnard Avenue, Apt. A, Lagrange, Georgia 30241 or by request for waiver of service via First Class Mail sent to said address.

20.

Defendant Deputy John Doe 1, Defendant Deputy John Doe 2, Defendant Deputy John Doe 3 and Defendant Deputy John Doe 4 were at all relevant times employees and/or agents of Defendant Troup County Sheriff's Office and/or Defendant Sheriff Woodruff. Defendant Deputy John Doe 1, Defendant Deputy John Doe 2, Defendant Deputy John Doe 3 and Defendant Deputy John Doe 4 are sued in their individual capacity and their official capacity.

21.

Defendant Jail Officer John Doe 1, Defendant Jail Officer John Doe 2, Defendant Jail Officer John Doe 3 and Defendant Jail Officer John Doe 4 were at all relevant times employees and/or agents of Defendant Troup County Sheriff's Office and/or Defendant Sheriff Woodruff.  Defendant Jail Officer John Doe 1, Defendant Jail Officer John Doe 2, Defendant Jail Officer John Doe 3 and Defendant Jail Officer John Doe 4 are sued in their individual capacity and their official capacity.

22.

Defendant Physician John Doe was at all relevant times an employee and/or agent of Defendant WeCare, Troup County Sheriff's Office and/or Defendant Sheriff Woodruff. Defendant Physician John Doe is sued in his individual capacity and his/her official capacity.

12

23.

Defendant Nurse Practitioner John Doe was at all relevant times an employee and/or agent of Defendant WeCare, Troup County Sheriff's Office and/or Defendant Sheriff Woodruff. Defendant Nurse Practitioner John Doe is sued in his/her individual capacity and his official capacity.

24.

Defendants are subject to the venue and jurisdiction of this Court.

25.

At all times relevant and material to the allegations of this Complaint, all Defendants acted under color of law.

## C. FACTUAL ALLEGATIONS

26.

Aaron Michael Martinette was a 33-year-old male suffering from mental illness, which included a diagnosis of bipolar disorder and seizure disorder. Aaron had suicidal ideations and manic-depressive episodic events where he would get loud, vocal and aggressive.

27.

On or about September 5, 2023, and for several days prior, Aaron while visiting his mother (Plaintiff Goodman) in LaGrange, was not sleeping, and he became increasingly agitated, aggressive, and vocally loud.

13

28.

Aaron and the Plaintiff agreed that Aaron needed to go to the hospital. Plaintiff called 911 explaining her son's condition and requested an ambulance to take Aaron to the hospital.

29.

Aaron was transported via ambulance to Wellstar West Georgia Medical Center and placed in Exam Room 14.

30.

While Aaron waited to be seen by a doctor, he started smoking a cigarette.  A hospital security guard who was alerted that Aaron was smoking, entered the Exam Room and told Aaron to put down the cigarette.

31.

In response, Aaron flicked the cigarette towards the security guard hitting him on his shirt.  The hospital security guard called the City of LaGrange Police who upon arriving at the hospital arrested Mr. Martinette and transported him to the Troup County Jail.

32.

On September 6, 2023, at approximately 3:00 a.m., upon arrival at the Troup County Jail, Aaron Martinette still exhibited extreme behavior indicating a mental disorder, including suffering manic-depressive episodic events where he would get loud, vocal, and aggressive.

33.

In violation of Troup County Sheriff's Office's and Troup County Jail's policies and procedures as well as the professional duties and responsibilities of Defendant WeCare,

14

its employees and agents, including Defendants Burford, Morris and Willoughby, Aaron did not receive a medical assessment upon being booked into the Troup County Jail or any physical or mental health evaluation whatsoever despite Defendants' knowledge that Aaron suffered from a severe mental disorder and was exhibiting extremely abnormal behavior.

34.

At 3:00 a.m. on September 6, 2023, Defendant Morris was requested to come to booking to "set eyes" on Aaron Martinette, after being told he was "kicking and banging" on the cell door. Defendant Morris did not attempt to examine or evaluate Aaron; she simply talked to him through the cell door. Defendant Morris observed Aaron's pupils to be dilated to 8mm and when she tried conversing with Aaron through the cell door, she recalls his response to be "your family is going to die."

35.

The next occasion for Defendant Morris to observe Aaron Marinette was at 5:15 a.m. on September 6, 2023, during "AM med pass". Aaron was sitting on the floor with his back against the wall with a face shield on and confined in the wrap restraint system ("wrap") due to Aaron's aggressive and extremely abnormal behavior. After a cursory examine of Aaron, while still in the "wrap", and noting a small cut on his lip, Defendant Morris made no mental health evaluation or assessment of Aaron.

36.

The next documented contact that Aaron had with Defendant WeCare medical staff was at shift change on September 6, 2023 when Defendant Willoughby was informed by Jail Officer Thomas that Aaron was to be released but was being held for a

15

1013 (involuntary commitment certificate in Georgia used to transport an individual experiencing a mental health crisis who poses a danger to themselves or others to a mental health facility for emergency evaluation and stabilization).

37.

At 11:00 a.m. that same day, Defendant Willoughby was asked to check restraints on Aaron Martinette while he was in the "wrap", and she observed that Aaron had an "agitated/aggressive demeanor"; however, she made no inquiry as why Aaron Martinette was still incarcerated when he was 1013 and going for treatment and stabilization.

38.

On September 6, 2023, at approximately 10:53 a.m. Defendant Braman was in booking when inmate Aaron Martinette began banging on his cell door with enough force to harm himself. Defendant Braman called for a team of officers to place Aaron in the "wrap". After being placed in the "wrap" Aaron Martinette was then moved to Jail Cell 706 for observation.

39.

On September 6, 2023, at 4:10 p.m. Jail Officer Jamie Thomas was about to feed dinner to inmate Aaron Martinette while Defendants Braman, Hendrix and Stocking stood by the cell door "because inmate Martinette was having a mental crisis".  After Defendant Braman told Aaron to get back, Aaron started to get aggressive and tried to walk out of his cell. Defendant Stocking then deployed his County issued taser with probes going into Aaron's upper back and right lower back.

16

40.

After being tased, Aaron Martinette was secured to the floor by Defendants Braman, Hendrix and Jail Officer Thomas. Defendant Braman then secured Aaron Martinette in mechanical handcuffs and removed both Taser probes from Aaron's body. Again, even after being "checked" medically at the sites of the Taser probes, none of the Defendants sought to have Aaron transferred to the hospital or a mental health facility for treatment and stabilization.

41.

As a result of the Defendants' inaction as set forth herein, Aaron never received medical treatment for his physical or mental health condition while incarcerated at the Troup County Jail.

42.

At no time during the course of Aaron Martinette's detention at the Troup County Jail did Defendant WeCare, its agents and/or employees, including but not limited to Defendants Willoughby, Morris, or Burford, seek to prescribe any medical treatment, mental health treatment, evaluation, assessment or recommend transfer to a hospital or mental health facility in order to provide necessary medical treatment for Aaron Martinette to address his physical and mental health conditions.

43.

At no time during Aaron Martinette's detention at the Troup County Jail did Defendant WeCare, its agents and/or employees, including but not limited to Defendants Willoughby, Morris, or Burford, conduct a medical assessment and/or mental health evaluation of Aaron Martinette.

17

44.

At no time did the staff and employees at the Troup County Jail and Troup County Sheriff's Office, including but not limited to Defendants Reeves, Braman, Stocking, Hendrix, Godfrey, Lemons or Figueroa-Laboy refer Aaron to the medical staff for treatment despite his continued abnormal, aggressive, irrational and erratic behavior, and despite their knowledge that he was suffering from a serious mental health condition.

45.

On September 7, 2023, at approximately 4:00 p.m. Aaron Martinette could be heard in Jail Cell 705, saying the Jail Officers "needed to open the door and let him leave in his fire truck". Defendant Braman, and Jail Officer Jamie Thomas, asked for assistance in feeding Aaron due to his aggressive and abnormal behavior. When the cell door opened, Aaron attempted to rush out the door, at which time Defendant Braman deployed his Taser resulting in Aaron falling out of the doorway onto the floor of the booking area. Defendant Godfrey placed Aaron's hands behind his back while Defendant Braman's Taser was still cycling. Aaron was taken back to his cell and the Taser prongs were removed from his stomach and back.

46.

After being returned to his cell and the Taser prongs removed, Aaron Martinette was placed in the sitting down position until Defendant Willoughby could check him out from being tased. At no time after examining Aaron, did Defendant Willoughby take any steps whatsoever to do a mental health evaluation or to send Aaron out for mental health treatment even though she was aware that Aaron was to be 1013 at the time he was booked at the Troup County Jail. Said failures constitute

18

a conscious disregard by these Defendants for Aaron Martinette's medical and mental health condition.

47.

Further evidence of Aaron Martinette's abnormal, irrational, aggressive, and erratic behavior which clearly indicated that he was suffering from a severe mental health condition as documented in the Troup County Jail records are:

- 9/6/2023 at approximately 3:15 a.m., Aaron Martinette was brought in while he was being searched at the booking counter, he started yelling for no reason making unnecessary noise. He was placed in the cell and was observed engaging in unusual behavior: He was yelling, hitting the windows, throwing County issued property around the cell, he was hitting himself and hitting his head against the window.

- 9/6/2023 – at approximately 5:00 a.m. Aaron presented himself in an inappropriate manner by exposing his penis in a public area and publicly masturbating.

- 9/6/2023 – Defendant Lemons gave Aaron verbal commands to get on the ground several times and Aaron was slamming his matt on the ground in an aggressive manner. Aaron started coming towards Defendant Lemons and would not put down the mat, again slamming it on the floor. Defendant Lemons deployed his County issued Taser for one trigger pull for a 5 sec cycle. The probes did not make contact with Aaron as he hit them with the mat. Aaron continued trying to hit jail officers with the matt, so Defendant Lemons again deployed his County issued Taser pulling the

19

trigger for another 5 sec cycle dry stunning Aaron in the lower back, the probes did not make full contact, so Defendant Lemons reapplied the dry stun with another trigger pull of a 5 sec cycle making contact with Aaron's buttocks area.

- 9/6/2023- Aaron Martinette started spitting at officers. Defendant Lemons used his hand and applied pressure to Aaron's lower jaw as a pressure point technique to keep him from spitting and then applied a spit mask on Aaron until he stopped spitting. Aaron was bleeding from the mouth and was checked by Defendant WeCare medical staff and cleared, as "medical determined Aaron did NOT need to go to the hospital". He was placed in the "wrap" at approximately 5:10 a.m.

- 9/7/2023- at approximately 5:27 p.m. Defendant Braman observed Aaron Martinette pushing open the door to his cell. Defendant Braman then picked up his County issued Taser and fired it into Aaron Martinette's left side and left leg causing Aaron to fall to the ground. Defendant Braman then made his way across the booking counter and secured Aaron's upper body, but while doing so Aaron Martinette attempted to grabbed Defendant Braman's Taser and a struggle ensued resulting in Defendant Braman striking Aaron Martinette twice with 2 closed fists to Aaron's face.

48.

Troup County Jail Officers, particularly those named as Defendants, and Troup County Deputies, particularly those named as Defendants, including Defendants Braman, Godfrey, Lemons, Figueroa-Laboy, Stocking, and Hendrix, were well aware of

20

Aaron's extreme abnormal behavior, but chose not to have him transported to the hospital or a mental health facility, even though one or more knew that he was to be 1013 (involuntary commitment certificate in Georgia used to transport an individual experiencing a mental health crisis who poses a danger to themselves or others to a mental health facility for emergency evaluation and stabilization).

49.

Defendant WeCare, its employees and agents, including Defendants Burford, Morris, and Willoughby, were not only aware of Aaron's extreme abnormal behavior, but chose not to have him examined by a physician, nurse practitioner, or mental health professional. These Defendants also failed in their professional duties and responsibilities by not ordering that Aaron Martinette be transported to the hospital or a mental health facility, even they knew that Aaron was to be 1013 (involuntary commitment certificate in Georgia used to transport an individual experiencing a mental health crisis who poses a danger to themselves or others to a mental health facility for emergency evaluation and stabilization).

50.

At approximately 9:00 p.m. on the evening of September 7, 2023, Sergeant Samuel Lacy was working in booking and went to check on Aaron Martinette. He observed Aaron breathing rapidly. Sgt. Lacy called for Defendant Burford, the on-duty nurse. Nurse Burford arrived and observed Aaron through the door without entering Aaron's cell. Finally, but unfortunately too late, Defendant Burford made the decision that Aaron needed to be transported to the ER due to his shallow breathing, and the fact he appeared to be suffering "acute psychosis".

21

51.

At 9:16 p.m. as Defendant Burford continued to observe Aaron through the door, she determined that Aaron appeared not to be breathing.

52.

At 9:18 p.m. a team of jail officers and deputies were assembled, and the cell door was finally opened. Aaron Martinette was observed not to be breathing, and Defendant Burford started CPR and EMS was called.

53.

Corporal Brian Sivell then relieved Defendant Burford doing CPR. At 9:23 p.m. the Troup County Fire Department arrived and took over CPR.  At 9:31 p.m. Aaron Martinette was placed on a stretcher and wheeled out of the Troup County Jail and at 9:45 p.m. the ambulance departed the Troup County Jail for West Georgia Medical Center.

54.

Aaron Martinette died at the West Georgia Medical Center in the early morning on September 8, 2023.

55.

From the time he was booked into Troup County Jail on the morning of September 6, 2023, until he was transported by EMS to West Georgia Medical Center at 9:45 p.m. on September 7, 2023, having gone from rapid breathing to not breathing at all, Aarron Martinette was in a constant state of acute psychosis, which was the very reason he and his mother (Plaintiff) decided to call 911 on September 5, 2023 so Aaron could be transported to the hospital for treatment and stabilization.

56.

At no time prior to his death on September 8, 2023, was Aaron Martinette 1013 to the hospital or mental health facility for treatment and stabilization.

57.

At no time during Aaron's incarceration did Defendants provide any emergency mental health services or have a physician, nurse practitioner, or mental health professional examine Aaron.

58.

At no time during Aaron's incarceration did Defendants consult with a physician or other medical or mental health professional for assistance in securing mental health and medical services for Aaron.

59.

During the time he was incarcerated at the Troup County Jail, Aaron Martinette was tazed by the Defendant deputies and jailers, no less than 6 times, with the full knowledge that Aaron was in a mental health crisis, needing immediate mental health care, though none was ever forthcoming.

60.

The autopsy performed on Aaron Martinette's body by the GBI Crime Lab revealed evidence of multiple acute injuries, including but not limited to, severe bruising and contusions over most of the body, multiple rib fractures, subdural cerebral hemorrhage, purple contusion of the ascending colon, and evidence of multiple subcutaneous hemorrhages.

23

61.

This failure to properly treat and monitor Aaron Martinette as required demonstrated a conscious and deliberate indifference by the Defendants to Aaron, his medical and mental health condition.

62.

While Aaron Martinette was incarcerated at the Troup County Jail, Defendant Reeves was Jail Administrator of the Troup County Jail and therefore the supervisor of the employees of the Troup County Jail and responsible for supervision of the inmates, including Aaron Martinette.

63.

As a direct and proximate result of the foregoing conduct of Defendants, Aaron Martinette died. His death would not have resulted had his medical condition, including his mental health condition been properly managed and treated by Defendants, had WeCare, its agents and employees, complied with the applicable standard of care and had Defendants not deprived him of his constitutional right to adequate and necessary medical care while incarcerated.

64.

Defendants are jointly and severally liable for Aaron Martinette's injuries, death, and Plaintiff's damages.

### D. **CAUSES OF ACTION**

**COUNT ONE**
**42 U.S.C. § 1983**
**CLAIMS AGAINST DEFENDANT WECARE, ITS EMPLOYEES AND AGENTS, INCLUDING PHYSICIAN JOHN DOE 1 AND NURSE PRACTITIONER JOHN DOE 1**

24

65.

Plaintiff realleges and incorporates paragraphs 1-64 as if they were fully restated verbatim herein.

66.

As the designated medical provider for the Troup County Jail at all times relevant to the incidents complained of herein, Defendant WeCare, its employees and agents, including Physician John Doe 1 and Nurse Practitioner John Doe 1, owed a duty to provide Aaron Martinette medical care within the standard of care.

67.

As the employer or principal of Physician John Doe 1 and Nurse Practitioner John Doe 1, Defendant WeCare is liable for Physician John Doe 1 and Nurse Practitioner John Doe 1's negligent acts and omissions.

68.

Physician John Doe 1 and Nurse Practitioner John Doe 1 were negligent in the care and treatment of Aaron Martinette in at least the following respects:

(a) Physician John Doe 1 and Nurse Practitioner John Doe 1 failed to provide necessary medical treatment to address the physical injuries and mental health condition of Aaron Martinette;

(b) Physician John Doe 1 and Nurse Practitioner John Doe 1 failed to have a medical assessment, including a medical history done on Aaron Martinette;

(c) Physician John Doe 1 and Nurse Practitioner John Doe 1 failed to have a mental health assessment performed on Aaron Martinette despite the knowledge that Aaron was suffering from bipolar disorder; seizure disorder; that

25

he had suicidal ideations; and he was suffering manic-depressive episodic events where he would get loud, vocal and aggressive; and

(d)  Physician John Doe 1 and Nurse Practitioner John Doe 1 failed to have Aaron Martinette evaluated by a mental health professional.

69.

As a direct and proximate result of Physician John Doe 1's and Nurse Practitioner John Doe 1's negligence, Aaron Martinette suffered severe and painful injuries, and death.

## COUNT TWO

## 42 U.S.C. § 1983
## CLAIMS AGAINST DEFENDANT WECARE, ITS EMPLOYEES AND AGENTS, INCLUDING DEFENDANTS WILLOUGHBY, MORRIS, AND BURFORD

70.

Plaintiff realleges and incorporates paragraphs 1-69 as if they were fully restated verbatim herein.

71.

As Aaron Martinette's medical providers, Defendant Nurses Willoughby, Morris, and Burford, and other WeCare nurses and medical providers, were responsible for the medical care and treatment of Aaron Martinette at the Troup County Jail owed Aaron a duty to provide him nursing and medical care within the standard of care.

72.

As the employer or principal of Defendant Nurses Willoughby, Morris, and Burford, Defendant WeCare is liable for these nurses' negligent acts and omissions. Defendant Nurses Willoughby, Morris, and Burford were negligent in at least the following respects:

26

(a) Failure to conduct a medical assessment and evaluation of Aaron Martinette;

(b) Failure to obtain a medical history on Aaron Martinette;

(c) Failure to provide treatment to address Aaron's obvious mental condition and acute psychosis as exhibited by his continuous abnormal, irrational, aggressive, and erratic behavior during the period he was incarcerated at the Troup County Jail;

(d) Failure to have Aaron Martinette evaluated by a mental health professional despite their knowledge that he was experiencing a serious mental condition while incarcerated at the Troup County Jail;

(e) Failure to have Aaron transferred to an appropriate medical facility to address his mental health condition; and

(f) Failure to notify the designated medical physician that Aaron was in need of immediate and emergency medical and mental health treatment;

73.

As a direct and proximate result of the Defendant nurses' negligence, Aaron Martinette suffered severe and painful injuries, and death.

74.

In addition to being vicariously liable for the negligent acts and omissions of its agents and employees, Defendant WeCare is directly liable for its own negligence in failing to maintain proper protocols for ensuring that inmates at the Troup County Jail, such as Aaron Martinette, received timely and necessary medical care including proper assessments and evaluations, referrals, and providing an overall level of care consistent

with the standard of care and the duties owed under its contract with Troup County and/or the Troup County Sheriff's Office.

## COUNT THREE

## 42 U.S.C. § 1983
## CLAIMS AGAINST INDIVIDUAL MEDICAL PROVIDERS UNDER FEDERAL CIVIL RIGHTS LAW

75.

Plaintiff realleges and incorporates paragraphs 1-74 as if they were fully restated verbatim herein.

76.

To the extent that the medical negligence of Defendants Physician John Doe 1, Nurse Practitioner John Doe 1, Burford, Morris, and Willoughby was so deficient as to be tantamount to no care at all, or otherwise fell so far below the standard of care as to authorize a finding of deliberate indifference to serious medical needs, such individual medical providers are personally liable for their deliberate indifference under the Eighth and/or Fourteenth Amendments irrespective of whether any federal civil rights claims are also brought against their employer/principal, which is not subject to *respondeat superior* liability under Section 1983.

77.

As employees or agents of a private contractor acting under color of law, individual medical providers are liable for their unconstitutional conduct but are not entitled to assert the defense of qualified immunity that is available only to public officials.

28

78.

At all times relevant hereto, each of the individual medical providers and any other individual employees or agents of Defendant WeCare and Defendant WeCare itself, acted under color of law.

## COUNT FOUR

### 42 U.S.C. § 1983
### DELIBERATE INDIFFERENCE FOR THE LIFE OF AARON MARTINETTE

79.

Plaintiff realleges and incorporates paragraphs 1-78 as if they were fully restated verbatim herein.

80.

As Jail Administrator, Defendant Reeves, and Defendant Jail Officers Stocking, Hendrix, Figueroa-Laboy, Jail Officers John Doe 1-4 were deliberately indifferent to the serious medical needs of Aaron Martinette in at least the following respects:

(a)     Failing to have a proper medical assessment performed;

(b)     Failing to have an evaluation of his medical condition;

(c)     Accepting him for booking into the Troup County Jail without a proper medical assessment and evaluation of his physical and mental health;

(d)     Failing to treat the injuries sustained when Aaron Martinette was tased multiple times by and/or forcibly beaten and restrained during physical conflict with Defendants Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4, and Deputy John Does 1-4 during his incarceration in the Troup County Jail;

29

(e)     failing to properly monitor Aaron Martinette, in violation of the policies of the Troup County Jail; and

(f)     failing to provide a complete health appraisal on Aaron Martinette, which includes a physical examination and psychological screening.

81.

As Jail Administrator, Defendant Reeves deliberately acquiesced to substandard medical care that is inconsistent with the standard of care and requirements of the contract with Defendant WeCare, thereby resulting in the denial of necessary medical and mental health treatment to Aaron Martinette and proximately causing Aaron to be deprived of his federal constitutional rights.

82.

Defendants Reeves, Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4, and Deputy John Does 1-4  are personally liable for their own actions and decisions which violated the rights of Aaron Martinette.

83.

Defendants Reeves, Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4, and Deputy John Does 1-4 Carrick, are liable for violating the Eighth and/or Fourteenth Amendment rights of Aaron Martinette.

84.

Defendants Reeves, Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4, and Deputy John Does 1-4 are not entitled to qualified immunity because their actions, omissions and decisions as set forth herein, violated clearly established law.

30

**COUNT FIVE**

**42 U.S.C. § 1983**
**SUPERVISOR LIABILITY OF DEFENDANT WOODRUFF AND REEVES FOR**
**FEDERAL CIVIL RIGHTS VIOLATIONS BY THEIR OFFICERS AND EMPLOYEES**

85.

Plaintiff realleges and incorporates paragraphs 1-84 as if they were fully restated verbatim herein.

86.

Defendants Sheriff Woodruff and Captain Reeves, as the supervisors of their officers and employees are liable for the actions of any such officers and employees which caused Aaron Martinette's rights to be violated as set forth herein, including but not limited to physical abuse which resulted in physical injuries to Aaron Martinette, the failure to provide a medical assessment and medical and mental health evaluation of Aaron Martinette, and the failure to provide necessary medical care and mental health treatment. Defendants Woodruff and Reeves are also liable as a result of their deliberate indifference to Aaron Martinette's constitutional rights and to the deprivation of such rights by their officers and employees.

87.

To the extent that medical and mental health care and treatment for Aaron Martinette was unconstitutionally denied due to the actions of Defendants Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4, Deputy John Does 1-4, Defendants Woodruff and Reeves, have supervisory liability under Section 1983 for their unconstitutional conduct of which they were aware that deprived Aaron Martinette of his rights under the Eighth and Fourteenth Amendments.

31

88.

Defendants Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4, Deputy John Does 1-4 knew that Aaron had a serious medical need, particularly that Aaron was in fact suffering from a mental health condition and was having a serious mental health crisis prior to and at all times during his incarceration. These Defendants further knew that Aaron posed a serious risk of harm to himself and others in that Aaron continued to become more aggressive, irrational, episodic and mentally unstable and required immediate medical attention, evaluation and medication.

89.

These Defendants and other employees at the Troup County Jail failed to provide or otherwise get necessary medical care for Aaron's serious medical and mental health needs that posed a risk of serious harm by failing to have Aaron evaluated by a medical and/or mental health professional during his incarceration at the Troup County Jail. Defendants Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4, Deputy John Does 1-4 violated policy by intentionally failing to have Aaron evaluated and treated by a medical and/or mental health professional while he was detained at the Troup County Jail, and such failure constitutes deliberate indifference to the life and mental health condition of Aaron Martinette.

90.

Defendants Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4, Deputy John Does 1-4 and other employees at the Troup County Jail's intentional failures as set forth herein, was a material and fatal cause of Aaron Martinette's death.

32

91.

Defendants Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4, Deputy John Does 1-4 acted under color of law.

92.

Because in this case, Defendants Woodruff and Reeves had the final authority with respect to the medical care of inmates in the Troup County Jail, Defendant Troup County Sheriff's Office and Defendant Troup County Jail are liable for federal civil rights violations caused by Defendants Woodruff's and Reeves' decisions as Troup County Jail policymakers and final decision makers regarding the provision of necessary medical services to inmates. The denial of such medical services to Aaron Martinette resulted in Defendant Troup County Sheriff's Office and Defendant Troup County Jail's liability for any such decisions made by Defendant Woodruff and Reeves that caused the violation of Aaron Martinette's rights.

93.

Defendants Woodruff and Reeves are personally liable for their own actions and decisions which violated Aaron's rights.

94.

As Sheriff and Jail Administrator, Defendant Sheriff Woodruff and Defendant Captain Reeves deliberately acquiesced in the failure to provide necessary medical care and in actions that fell below the applicable standard of care and that were in violation of the requirements of the contract with WeCare thereby resulting in the denial of necessary treatment that proximately caused Aaron Martinette to be deprived of his federal constitutional rights.

95.

Given the deliberate indifference of Defendants Woodruff, Reeves, Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4, and Deputy John Does 1-4, said Defendants are liable for Aaron's pain and suffering and mental anguish immediately prior to his death, and the full value of Aaron's life.

96.

Defendants Woodruff, Reeves, Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4 and Deputy John Does 1-4 acted under color of law.

**COUNT SIX**

**42 U.S.C. § 1983**
**EXCESSIVE FORCE RESULTING IN SERIOUS INJURY TO AARON MARTINETTE**

97.

Plaintiff realleges and incorporates paragraphs 1-96 as if they were fully restated verbatim herein.

98.

Aaron Martinette had a clearly established constitutional right to be free from the use of excessive force. Defendants Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4, and Deputy John Does 1-4 intentionally committed acts that violated Aaron's constitutional rights not to be subjected to excessive or unreasonable force while being incarcerated at the Troup County Jail, specifically by the excess use of Taser strikes on the body of Aaron Martinette, and the repeated use of physical blows to the body of Aaron Martinette resulting in severe bruising and contusions

34

over most of the body, multiple rib fractures, subdural cerebral hemorrhage, purple contusion of the ascending colon, and evidence of multiple subcutaneous hemorrhages.

99.

Defendants Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4, and Deputy John Does 1-4 use of force as set forth herein was excessive, objectively unreasonable, unjustified, and violated Aaron Martinette's constitutional rights secured under the Fourteenth Amendment of the United States Constitution. U.S. Const. Amend. XIV, § 1. These Defendants acted under color of law.

100.

Defendants Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4, and Deputy John Does 1-4 are liable for the injuries, pain and suffering and any other damages caused as a result of their use of excessive, objectively unreasonable, and unjustified force on Aaron Martinette.

## COUNT SEVEN

### 42 U.S.C. § 1983
### DEFENDANTS SHERIFF WOODRUFF, CAPTAIN REEVES, TROUP COUNTY JAIL AND TROUP COUNTY SHERIFF'S OFFICE FAILED TO PROVIDE PROPER TRAINING AND EDUCATION FOR THEIR JAIL OFFICERS, AS WELL AS FAILED TO ENFORCE THE STATED POLICES AND PROCEDURES OF THE TROUP COUNTY JAIL AND TROUP COUNTY SHERIFF'S OFFICE

101.

Plaintiff realleges and incorporates paragraphs 1-100 as if they were fully restated verbatim herein.

102.

Defendants Sheriff Woodruff, Captain Reeves, Troup County Jail, and Troup County Sheriff's Office were and are responsible for, and are the final policymakers for,

35

the supervision, administration, policies, practices, customs, and operations of the Troup County Jail and Troup County Sheriff's Office at all times relevant to the allegations of this Complaint.

103.

The violation of Aaron Martinette's rights, both those guaranteed by the Constitution of the United States of America and by the Constitution of the State of Georgia, by Defendants Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4, and Deputy John Does 1-4 acting under color of the laws of the State of Georgia, caused Aaron Martinette to be subjected to physical and mental abuse, deprivation of much needed medical and mental health care, and ultimately caused the death of Aaron Martinette in violation of Art. I, Section 1, Paragraphs I and XVII of the Constitution of the State of Georgia, and the Eighth and Fourteenth Amendments to the United States Constitution as enforced through 42 U.S.C § 1983 by the failure of Defendants Sheriff Woodruff, Captain Reeves, Troup County Jail, and Troup County Sheriff's Office to provide adequate and appropriate training and education for the deputies and personnel of the Troup County Jail regarding the handling, treatment, and medical needs of mentally ill inmates such as Aaron Martinette; allowing the deputies and jail officers to violate Troup County Jail's policies and procedures regarding the handling and treatment of mentally ill inmates; failing to enforce policies and failing to properly discipline deputies and jail officers, thus creating a culture in the Troup County Jail and the Troup County Sheriff's Office wherein violating citizen's rights has been tolerated.

36

104.

Defendants Sheriff Woodruff, Captain Reeves, Troup County Jail, and Troup County Sheriff's Office are liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), for violating Aaron Martinette's constitutional rights because their policies, customs and practices directly caused and were the "moving force" behind Aaron's death.

## COUNT EIGHT

### DEFENDANTS SHERIFF WOODRUFF'S and CAPTAIN REEVES' LIABILITY FOR INADEQUATE TRAINING/SUPERVISION/DISCIPLINE IN VIOLATION OF THE FOURTH AMENDMENT AND DELIBERATE INDIFFERENCE TO MEDICAL/MENTAL HEALTH NEEDS OF INMATES

105.

Plaintiff realleges and incorporates paragraphs 1-104 as if they were fully restated verbatim herein.

106.

Defendants Sheriff Woodruff, Captain Reeves, Troup County Jail, and Troup County Sheriff's Office have inadequate and insufficient policies for dealing with individuals experiencing medical/mental health crisis.

107.

Appropriate policy would incorporate the need for recognizing medical/mental health episodes, the need for de-escalation, calming techniques, using time as an ally rather than allowing officers to interpret what "extraordinary care" means, as some might interpret this to mean it is advisable to rush and end the circumstances quicker, faster and with more force than ordinary.

108.

Appropriate policy would include crisis intervention and suicide prevention and would incorporate scenarios and instances from Federal case law to serve as explanations and warnings for the types of behaviors to look out for and expect. Model policy and training action steps, guiding principles, insights, and provisions from organizations such as Department of Justice, Police Executive Research Forum (PERF), international Chiefs of Police (IACP) could and should be incorporated. Instructions to seek advice from behavioral health specialists should also be included as well as essential elements of handling this special population with emphasis on defusing tactics, communication, coordination of resources, containment, elongation of the time of the encounter, all to occur in the field on the scene.

109.

Georgia's General Assembly has found, as stated in the enacted "Georgia Behavioral Health and Peace Officer Co Responder Act" Code Section 37-3-4: "Demands on peace officers include responding to emergencies involving individuals with a mental or emotional illness, developmental disability or addictive disease" and "the absence of a behavioral health specialist may result in the arrest of individuals whose conduct would be more effectively treated and stabilized in a behavioral health setting rather than a jail or prison."

110.

There is an obvious need to appropriately train officers and jail staff with respect to responding to and or detaining or taking emotionally disturbed persons into custody,

and or contacting health professionals to assist with the response and therefore it was deliberately indifferent not to do so.

111.

A reasonable person in the supervisor's position would know that his/her failure to train and supervise reflected deliberate indifference and these Defendants' conduct was causally related to constitutional infringement by their subordinates (deputies and jail officers).

112.

Defendants Sheriff Woodruff and Captain Reeves are supervisors of the deputies and jail officers who personally participated in the constitutional violations and there is a causal connection between the actions of the supervising officials and the constitutional deprivations alleged herein.

113.

Defendants Sheriff Woodruff, Captain Reeves, Troup County Jail, and Troup County Sheriff's Office knew or should have known that their deputies and jail officers were likely to encounter individuals who experienced episodic mental illness resulting in a significant risk of injury and danger. Defendants Sheriff Woodruff, Captain Reeves, Troup County Jail, and Troup County Sheriff's Office Defendants either chose not to train officers on this issue or inadequately trained and/or improperly supervised officers on this issue.

114.

The violations of Aaron Martinette's rights were proximately caused by, and pursuant to, the policies, customs, usages, and/or longstanding patterns and practices of

Defendants Sheriff Woodruff, Captain Reeves, Troup County Jail, and Troup County Sheriff's Office, their deputies and jail officers.

115.

The policies, customs, usages, patterns and practices of Defendants Sheriff Woodruff, Captain Reeves, Troup County Jail, and Troup County Sheriff's Office, their deputies and jail officers, that caused the violations of Aaron Martinette rights include, but are not limited to:

(a) Failing to train, supervise, investigate, discipline, and adopt and enforce adequate policies concerning the Fourth Amendment's prohibition on the use of excessive force and unreasonable seizure and/or condoning the use of excessive force;

(b) Failing to train, supervise, discipline, and adopt and enforce adequate policies concerning the care of inmates suffering from mental illness;

(c) Failing to train, supervise, discipline, and adopt and enforce adequate policies concerning identification, interactions, and unnecessary restraining of inmates suffering from mental illness; and

(d) Failing to train, supervise, discipline, and adopt and enforce adequate policies concerning mental ill or unstable persons suffering from bipolar disorder, catatonic symptoms, acute psychosis, and other known causes of preventable death among persons experiencing mental abnormalities.

116.

Without limitation, these customs or policies include (1) having its deputies and jail officers use excessive force, and (2) failure to adequately discipline, train, or otherwise

40

direct its deputies and jail officers concerning the proper standards for use of force, including, but not limited to, the standards of use of force in encounters with people with mental illness and/or disability such a bipolar disorder.

117.

Defendants Sheriff Woodruff, Captain Reeves, Troup County Jail, and Troup County Sheriff's Office are charged with enacting and enforcing policies, procedures, protocols, and customs to ensure their deputies and jail officers are properly trained to carry out their duties. These Defendants failed in this regard by enacting policies, whether written or unwritten, that demonstrate deliberate indifference to Aaron Martinette, thereby causing the herein complained of harm suffered by Aaron Martinette, including one or many of the following failures:

(a) Not properly training officers on the use and dangers of excessive force;

(b) Training and/or allowing officers to use excessive force on people who are being non-complaint;

(c) Not properly training officers on the identification of mental health crisis versus non-compliance; and

(d) Having wholly inadequate disciplinary processes in place.

118.

Defendants thereby demonstrated deliberate indifference to Aaron Martinette's constitutional rights, as complained of herein, and the harm suffered is a direct result of deliberate indifference and was foreseeable.

41

119.

All herein complained of actions of Defendants Sheriff Woodruff, Captain Reeves, Troup County Jail, Troup County Sheriff's Office, Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4, and Deputy John Does 1-4 were done recklessly, intentionally, maliciously, grossly negligently, wantonly, knowingly, and with deliberate indifference, and in a manner that shocks the conscience, and were objectively unreasonable.

## **COUNT NINE**

## **VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA) 42 U.S.C § 12101 AND §504 of the REHABILITATION ACT of 1973**

120.

Plaintiff realleges and incorporates paragraphs 1-119 as if they were fully restated verbatim herein.

121.

Defendants Troup County Jail, Troup County Sheriff's Office and Troup County, Georgia are public entities as that term is defined under §12131(1) of the ADA in that they are local governments or departments, agencies, or instrumentalities of a local government (Troup County, Georgia) or work for local governmental entities which are recipients of federal funds.

122.

The ADA prohibits discrimination against a person on the basis of their disability.

123.

Aaron Martinette at all times relevant hereto had and suffered from a mental condition that constitutes a disability as defined under §12101(1)(B)(C) of the ADA.

42

124.

As set forth herein, at no time during his incarceration at the Troup County Jail was Aaron Martinette provided any treatment, consultation, or services whatsoever to address his mental health condition and disability as a result thereof.

125.

Defendants Sheriff Woodruff, Captain Reeves, Troup County Jail, Troup County Sheriff's Office, Troup County, Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4, and Deputy John Does 1-4 not only failed to provide such needed and necessary mental health treatment to Aaron Martinette but also failed to provide reasonable accommodation and, as a result, denied Aaron Martinette the benefit, services, and privileges of these public entities, departments and instrumentalities of Troup County, all in violation of Title II of the ADA. Such acts and failure by these Defendants were discriminatory under the ADA.

126.

Defendants Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4, and Deputy John Does 1-4's actions in using force including unreasonable, unnecessary and excessive force without considering or utilizing any reasonable less intrusive alternative means of de-escalation or calming techniques or other accommodation in light of Aaron Martinette's mental health condition, violated Title II of the ADA. Defendants Sheriff Woodruff, Captain Reeves, Troup County Jail, Troup County Sheriff's Office, Troup County, are responsible for the acts, omissions, and violations by Defendants deputies Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4, and Deputy John Does 1-4.

43

127.

The acts of Defendants Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4, and Deputy John Does 1-4 as set forth herein were in violation of the established policies and procedures of the Troup County Sheriff's Office, Troup County Jail, and Troup County for dealing with and encountering persons with mental health illness and/or suffering from a mental health condition or disability.

128.

Section 504 of the Rehabilitation Act of 1973 ("§504") prohibits a law enforcement department such as Defendants Troup County Sheriff's Office and/or Troup County Jail from discriminating against persons with a mental health disability.

129.

§504 requires that agencies such as Defendants Troup County Sheriff's Office and/or Troup County Jail make reasonable modifications to its policies, practices or procedures when such modifications are necessary to avoid discrimination on the basis of a person's disability.

130.

§504 requires recipients of federal funds to reasonably accommodate persons with disabilities in their program activities and services.

131.

Defendants Troup County Sheriff's Office, Troup County Jail, and Troup County, Georgia are and were at all times relevant hereto recipients of federal financial assistance and therefore, are subject to the requirements and mandates of §504.

44

132.

§504 requires such recipients to modify such facilities, services, and programs as necessary to accomplish its purpose.

133.

Defendants Reeves, Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4, and Deputy John Does 1-4 are employed by Troup County Sheriff's Office and at all times relevant to the allegations of this Complaint were acting within the course and scope of employment and under color of law.

134.

Defendants Reeves, Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4, and Deputy John Does 1-4 are subject to the requirements and mandates of §504.

135.

Defendants Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4, and Deputy John Does 1-4 failed to accommodate Aaron Martinette's mental health disability by failing to summon crisis intervention assistance, by escalating their encounters with him instead of summoning and waiting for crisis intervention personnel to provide assistance to a person clearly suffering from a mental illness.

136.

Defendants Troup County Sheriff's Office and Troup County Jail failed to have in place adequate and sufficient policies for dealing with individuals experiencing a mental health crisis or condition.

45

137.

Appropriate policy would incorporate the need for recognizing medical/mental health episodes, the need for de-escalation, calming techniques, using time as an ally rather than allowing deputies and jail officers to interpret what "extraordinary care" means, as some might interpret this to mean that it is advisable to rush and end the circumstances quicker, faster and with more force than ordinary.

138.

The failure to have such policies in place made deputies, jail officers, and staff of Defendants Troup County Sheriff's Office and Troup County Jail ill-equipped to deal with, appropriately handle and provide reasonable accommodations to persons with a mental health disability, such as Aaron Martinette. Such failure was in violation of the ADA and §504 and lead to and caused the death of Aaron Martinette as set forth herein.

139.

Defendants Troup County Sheriff's Office and Troup County Jail employees, including the named Defendants herein, had no, or at best, inadequate and deficient training with regard to dealing with persons experiencing a mental health condition or disability. Defendants Troup County Sheriff's Office, Troup County Jail, and Troup County, Georgia failed to provide proper and sufficient training in this respect to their employees including those Defendants named herein. As a result of this failure to train and lack of training, Defendants Braman, Stocking, Hendrix, Godfrey, Figueroa-Laboy, Lemons, Jail Officer John Does 1-4, and Deputy John Does 1-4 were not equipped to properly respond to Aaron Martinette by providing him much needed mental health treatment and/or reasonable accommodation for his mental health disability.

46

## COUNT TEN

## PUNITIVE DAMAGES

140.

Plaintiff realleges and incorporates paragraphs 1-139 as if they were fully restated verbatim herein.

141.

The conduct of the individual Defendants and Defendant WeCare, constitutes willful misconduct, malice, fraud, wontedness, oppression, or that entire want of care which would raise the entire presumption of conscious indifference to consequences. Therefore, punitive damages should be assessed against these Defendants in order to penalize, punish or deter them.

## E. DAMAGES

142.

Plaintiff realleges and incorporates paragraphs 1-141 as if they were fully restated verbatim herein.

143.

As a direct and proximate result of the aforementioned acts, omissions, and negligence of the Defendants, Aaron Martinette died a premature death at the age of 33 and experienced conscious pain and suffering before his death, including both physical and mental suffering, and his estate incurred funeral and other necessary expenses, and Plaintiff is entitled to recover the full value of Aaron's life, both economic and noneconomic, compensatory damages for the aforementioned losses and injuries, and

punitive damages, to the extent such damages may be awarded, in an amount to be proven at trial and determined by a fair and impartial jury.

## F.  PRAYERS FOR RELIEF

**WHEREFORE**, Plaintiff prays as follows:

a)   That process and summons be issued to Defendants as required by law;

b)   That this Complaint be served on all Defendants;

c)   That Plaintiff have a trial by twelve fair and impartial jurors;

d)   That judgment be entered against Defendants for the full value of Aaron Martinette's life;

e)   That judgment be entered against Defendants for Aaron Martinette's pain, suffering, and mental anguish immediately prior to his death;

f)   That Plaintiff have judgment against Defendants for funeral and burial expenses in the amount of $11,149.42;

g)   That Plaintiff recover all damages available under Georgia and federal law;

h)   That Plaintiff be awarded punitive damages against the individual Defendants pursuant to O.C.G.A. § 51-12-5.1;

i)   That Plaintiff recover all interest permitted under Georgia law;

j)   That Plaintiff recover reasonable attorney's fees and expenses of litigation; and

k)   That Plaintiff be granted such other and further relief as this Court may deem just and proper.

This 5th day of September, 2025.

48

/s/ D. James Jordan
D. JAMES JORDAN
Georgia State Bar No.: 404465
VIRGIL L. ADAMS
Georgia State Bar No.: 004625
ASHLEY B. PITTS
Georgia State Bar No.: 481759

ADAMS, JORDAN, & HERRINGTON, P.C.
115 E. McIntosh Street
Milledgeville, Georgia  31061
Phone:    (478) 453-3997
Facsimile:(478) 452-4880
jjordan@adamsjordan.com
vadams@adamsjordan.com
apitts@adamsjordan.com